CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 29 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| BARBARA EDMUNDS, | ) | CASE NO. 4:12CV00051 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's July 12, 2010 protectively-filed application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

In a decision dated September 23, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since April 1, 2010, her alleged disability onset date.[2] (R. 11.) The Law Judge determined that plaintiff suffered

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. (Dkt. No. 16.) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of

medically determinable impairments of hypertension and back difficulty.³ (R. 11-13.) However, he concluded that she did not have a severe impairment or combination of impairments. (R. 13-16.) Accordingly, he found that plaintiff was not disabled.⁴ (R. 16.)

Plaintiff appealed the Law Judge's September 23, 2011 decision to the Appeals Council. (R. 1-7, 277-279.) In its October 9, 2012 notice, the Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-2.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would

---

impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. *See* 20 C.F.R. §§ 404.1572 and 1574. The sequential evaluation is a five step process used by the Commissioner to evaluate whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). If a claimant is found not disabled at any level prior to the final level, the inquiry is to stop. *Id.* In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is December 31, 2013. *See* 20 C.F.R. § 404.131(a); (R. 11, 126.)

³ A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

⁴ While the Law Judge heard testimony from Robert W. Jackson, LMFT, LPC, CRC, CCM, a vocational expert, he did not rely on it in his decision. (R. 15-16, 35-36.)

accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff challenges the final decision of the Commissioner on several grounds. First, she argues that the Law Judge erred in finding that her osteoarthritis, back pain, and migraine headaches were not severe impairments. (Dkt. No. 15, at 11-17.) Second, she contends that the Law Judge committed "irrational and reversible error" by discounting her complaints of pain and its resulting work-related limitations. (Dkt. No. 15, at 17-18.) Finally, plaintiff offers that, if this court finds there was insufficient objective medical testing to make an informed decision about the severity of her impairments, it should remand the case to the Commissioner with directions to order additional testing at the Commissioner's expense. (Dkt. No. 15, at 18-20.)

At step 2 of the sequential evaluation, the Law Judge must determine whether a claimant possesses a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is defined as a condition which significantly limits an individual's physical or mental ability to perform basic work activities, while a non-severe impairment does not. 20 C.F.R. § 404.1520(c), 1521(a). A non-severe impairment is also defined as a slight abnormality which has only a minimal effect on an individual, such that it is not expected to interfere with an individual's ability to work, irrespective of age, education, or work experience. *See Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984); 20 C.F.R. § 404.1520a(d)(1); SSR 96-3p, 1996 WL 374181 (July 2, 1996); SSR 85-28, 1985 WL 56856 (1985). Basic work activities are "the

abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples of basic work activities include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Plaintiff bears the burden of proving at step 2 that she suffers from a medically determinable impairment and that it is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 fn5 (1987).

As said, plaintiff contends that her osteoarthritis, back pain, and migraine headaches are severe impairments. (Dkt. No. 15, at 11-17.) The undersigned first notes that plaintiff's medical record is brief. There are only six treatment notes of record from August 2009 through July 2010 (R. 169-177, 178-184, 185-188, 189-194, 195-198, 207), only two of which are dated after plaintiff's disability onset date (R. 169-177, 195-198), and a handful of x-rays and mammogram screenings (R. 177, 201-204, 213-220). These records indicate that plaintiff has a history of osteoarthritis, back pain, and migraine headaches, and she was diagnosed with the latter two impairments on several occasions.[5] However, the records are not as supportive for the argument that these conditions cause plaintiff significant limitations.

Plaintiff has received the majority of her treatment from Halifax Primary Care. In August 2009, plaintiff's history included hypertension and osteoporosis, and she complained of increased frequency of urination, a foul smell in her urine, feeling tired and dizzy, lower back

---

[5] As best as the undersigned can determine, there is no evidence that plaintiff was specifically diagnosed with osteoarthritis during the relevant period. An x-ray does suggest degenerative changes from osteoarthritis (R. 213.) and some records note she has a history of it (R. 178, 189.), but there is no diagnosis or prescribed treatment of record. Plaintiff has also frequently been diagnosed with osteoporosis, hypertension, polyuria, hyperlipidemia, among other conditions, each in varying degrees of control. (R. 169-177, 178-184, 185-188, 189-194, 195-198, 207)

4

pain, headache, and sinus stuffiness and pressure. (R. 207.) Physical examination revealed some tenderness in her sinuses, abdomen, and pretibial region, but it was otherwise normal, with intact range of motion in all joints, and she was only diagnosed with polyuria/increased frequency of urination. (R. 207.) In September 2009, plaintiff was reported to have a history of hypertension and osteoporosis, along with migraines and osteoarthritis at multiple sites. (R. 178.) She complained of chest pain, allergies, back ache, joint pain, headache, and pain of 7/10. (R. 178-180.) She described her headaches as migraines that happened everyday and lasted the whole day, for which medication had not successfully alleviated. (R. 180.) She also stated that her headaches were associated with blurry vision and "floaters," but that she suffered no photophobia, phonophobia, nausea, or vomiting, and preferred to rest in a dark room when she had a headache. (R. 180.) Physical examination findings were entirely normal, with intact nerves, normal reflexes, normal mental function, no joint or back tenderness, normal gait, and normal range of motion in her neck, back, and extremities. (R. 180-181.) Plaintiff was diagnosed with a variety of conditions, including "migraine: chronic, not controlled"; and was prescribed a trial of Propranolol BID and instructed to stop taking BC powder and NSAID, as they likely caused her gastritis. (R. 182-183.)

In October 2009, plaintiff complained of back pain, stiffness, and reduced range of motion; hypertension; and persisting headaches, though she said that they had improved slightly on Propranolol. (R. 185.) Physical examination findings were generally normal, but they did reveal abnormalities in plaintiff's back, including joint and muscle tenderness and tightness, abnormal and painful rotation, and abnormal and painful lateral bending, possibly dating back to a motor vehicle accident more than thirty years before. (R. 185-187.) Straight leg and Patrick's testing were normal. (R. 187.) Plaintiff was diagnosed with several conditions, including

chronic uncontrolled back pain, though there was no diagnosis of headaches or migraines; and she was prescribed Tramadol and scheduled for spinal x-rays. (R. 187-188.) An x-ray taken in November 2009 revealed exaggerated lumbar lordosis and extensive atherosclerotic aortic calcifications, but her vertebral body heights were preserved, her sacroiliac joints were well aligned, and there was no significant degenerative disease. (R. 201.) The x-ray was described as "normal," with no suggestion of degenerative disc disease or arthritis. (R. 199-200.)

A physical examination performed in January 2010 revealed no abnormalities, and plaintiff's back pain was found to be controlled. (R. 189-194.) She did not complain of any joint pain outside of her back and stated that her migraine headaches were "occasional." (R. 189-191.) Notably, plaintiff was not diagnosed with either headaches or migraines, and she was taken off Propranolol and not prescribed any medication in its place. (R. 190, 193-194.)

However, in May 2010, one of plaintiff's chief complaints was chronic daily headaches/migraine headaches, relating that she had suffered them for years, that some could last a whole day, but that they were partially helped by sleeping and occasionally by Tylenol. (R. 195.) While plaintiff described her headaches as migraines, she denied any associated blurry vision, nausea, vomiting, extremity weakness or paresthesias, lightheadedness, or dizziness. (R. 195.) Plaintiff also stated that she continued to have moderate localized back pain, stiffness, and reduced range of motion. (R. 195-196.) Her physical examination once again was normal, and her back pain was listed as controlled. (R. 197.) However, plaintiff's migraines were found to be uncontrolled, as she could not tolerate longer acting Propranolol and "her headaches were still there" while on Propranolol PO BID. (R. 198.) She was prescribed Topamax for headache prevention, Tramadol and Tylenol for back pain, encouraged to walk up to two miles a day, and instructed to follow up in three to four months. (R. 198.) Finally, in July 2010, plaintiff sought

treatment at Halifax Regional Hospital's Emergency Department. (R. 169-177.) She complained of nausea, vomiting, and abdominal pain, and urinary urgency, but she denied suffering any other symptoms. (R. 169-170.) Plaintiff's physical examination revealed abdominal pain to palpation, but it was otherwise normal, and she was discharged the same day. (R. 172.)

Plaintiff's medical records thereafter are very limited. She received a mammogram in December 2010,[6] which was normal (R. 220-221), and in January 2011, plaintiff complained of limb pain, and an x-ray of her right hand revealed degenerative changes of osteoarthritis, tissue edema near her joints, and an old injury. (R. 213-217.)

There is no question that plaintiff's medical history suggests a finding that she suffers some osteoarthritis and back difficulties. However, reports of physical examinations have indicated that by January and May 2010, her back pain was controlled, with no observable physical or mental limitations, and normal test results. *See Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir.1986) (noting that if a symptom can be reasonably controlled by medication or treatment it is not disabling); *Hamilton v. Shalala,* 43 F.3d 1466, at *3 (4th Cir. 1994) (unpublished) (impairments that are controlled by medication are not severe). A November 2009 x-ray of her lumbar spine was normal, with no signs of arthritis or degenerative disc disease. (R. 199-201.) While an x-ray in January 2011 showed signs of osteoarthritis (R. 213), there is no evidence in the record that plaintiff had significant symptoms or limitations in her use of her extremities, and she has never been prescribed medication or received a diagnosis for this condition. Plaintiff even was encouraged to walk up to two miles a day, certainly suggesting that her doctors believed she was capable of substantial physical activity. (R. 198.) The only evidence of record that plaintiff sought treatment for either condition after May 2010 is the

---

[6] Plaintiff previously received a mammogram in November 2009. (R. 202.)

single x-ray of her hand in January 2011. (R. 213.) Moreover, while there is evidence she did not have health insurance and may have had difficulties affording medical treatment, there is nothing to suggest plaintiff attempted to receive treatment after May 2010 and was refused on the basis of her inability to afford it. *See Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984); SSR 82-59, 1982 WL 31384, at *4 (1982). The Law Judge considered all available evidence in determining that plaintiff's back problems and history of arthritis were not severe impairments, and the undersigned finds that there is substantial evidence supporting his decision.

Plaintiff's migraines present a much closer issue. The Law Judge specifically considered plaintiff's migraines, but he found them to be a non-severe impairment. (R. 15.) While medication "slightly" and "occasionally" relieved or prevented her symptoms, testimony was that her headaches persisted, and they were diagnosed as chronic and uncontrolled in September 2009 and May 2010. (R. 181, 197.) However, plaintiff's headaches had improved in October 2009 and were only "occasional" in January 2010 while on Propranolol. (R. 185, 191.) Moreover, plaintiff's treatment providers did not diagnose her with either chronic headaches or migraines on either occasion, and she was not prescribed any medication for the condition in January 2010. (R. 189-194.) Plaintiff also did not complain of suffering headaches and did not report taking medication for them when she presented at the emergency room in July 2010. (R. 169.)

Though the Law Judge pointed out that there is no supporting neurological or head/brain imaging evidence (R. 15), migraines are not normally diagnosed or confirmed by laboratory or diagnostic testing, though such testing can be useful in excluding other possible causes of headaches. *See Sidbury v. Astrue*, No. 7:08-CV-168, 2009 WL 3029741, at *6 (E.D.N.C. September 22, 2009); *Parsley v. Astrue*, No. 2:08-cv-01227, 2009 WL 1940365, at *3-4

(W.D.Pa. July 2, 2009). Instead, treating physicians must compare plaintiff's alleged symptoms to clinical criteria to accurately diagnose and treat their condition. *Id.* Here, plaintiff has complained of headaches, but in May 2010, she did not suffer blurry vision, nausea, vomiting, extremity weakness or paresthesias, or lightheadedness or dizziness, all symptoms normally associated with migraines. (R. 195.) However, plaintiff's treatment providers did diagnose plaintiff with migraines, and neither the Commissioner nor the undersigned possess the expertise to challenge that medical diagnosis.

The Law Judge also relied on other factors in determining that plaintiff's allegations were not entirely credible and that her migraines did not constitute a severe impairment. (R. 12-15.) The most important factor is what the Law Judge saw as a sparse treatment record. Though plaintiff claims she has suffered from chronic migraines that can last for an entire day for years, she sought and received treatment for them only a handful of times during the relevant period. She alleges that these gaps in her treatment record were due, in part, to lack of resources (Dkt. No. 15, at 15, 18-20), but her primary treatment provider invited her in May 2010 to report back to him if she could no longer afford medication and to follow up in 3 to 4 months. (R. 198.) There is no evidence that she either reported back to the doctor or sought treatment for migraines from May 2010 through the date of her administrative hearing in September 2011. The Law Judge was entitled to rely on these gaps in plaintiff's treatment record when determining her credibility, and, here, plaintiff has not any reasonable explanation or "good cause" for these gaps. *See* SSR 96–7P, 1996 WL 374186, at *7-8.

The only medical opinion evidence concerning the severity of her condition is that of the State agency experts, who concluded that plaintiff's migraines were non-severe. (R. 126-131, 147-153.); *See Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (the opinion of a non-

examining physician may be relied upon when it is consistent with the medical record). The Law Judge even left the record open after the hearing to allow plaintiff an opportunity to provide additional evidence, but no additional evidence was submitted during that period. (R. 14, 36-37.) Plaintiff has the burden of proof at step 2, and though the severity of plaintiff's migraines is a close question, the undersigned finds that there is substantial evidence supporting the Law Judge's determination that they do not rise to the level of a severe impairment.[7]

Finally, plaintiff argues that "the only just thing to do" is to remand the case to the Commissioner for consultative examination and testing to further develop a record that she believes was stunted by her lack of health insurance. (Dkt. No. 15, at 18-20.) It is true that where the record is insufficient or inconsistent in a manner that prevents the Commissioner from reaching a conclusion regarding whether a claimant is disabled, the Commissioner is authorized to exercise her discretion to secure additional information about the claimant's condition, including a consultative examination. 20 C.F.R. § 404.1520b. Though the medical record was limited in this case, the undersigned finds that the limitations appear to be more a lack of proof than insufficient in a way that would compel the Commissioner to obtain additional evidence. The regulations do not permit a claimant to shift the burden of proving the severity of an impairment to the Commissioner solely because the claimant's evidence falls short. Here, there

---

[7] The Law Judge also relied on plaintiff's daily activities, finding that they were not consistent with her allegations of disabling functional limitations. (R. 14-15.) The Law Judge may consider plaintiff's daily activities when assessing her credibility, but plaintiff need not be confined to bed to be found disabled. 20 C.F.R. § 404.1529(a); *See Trotten v. Califano*, 624 F.2d 10, 11–12 (4th Cir. 1980) ("An individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act"). Here, plaintiff's daily activities are not particularly substantial, and there is evidence that she has help in performing some of them. (R. 27-31, 114-118, 137-146.) However, her daily activities do show that she is able to manage regular chores and self-care, lift twenty pounds, walk up to mile, and needs only to lay down occasionally, once a day, for ten minutes. *Id.* Moreover, the Law Judge did not base his credibility finding solely on plaintiff's daily activities, instead considering it as a factor in his determination. Accordingly, while the undersigned would not assign much weight to plaintiff's daily activities, the Law Judge's reliance on them does not constitute an error requiring remand.

is evidence concerning plaintiff's treatment, physical examinations, imaging analysis, and medications from August 2009 through January 2011. While additional evidence might have proven useful, the record contains a sufficient basis for determining the severity of plaintiff's impairments, and the Commissioner's failure to order a consultative examination was not an abuse of discretion.

For all these reasons, it is RECOMMENDED that an Order enter DENYING plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ *signature*
U.S. Magistrate Judge

Date: July 29, 2013